1 2024 CO 67 Masterpiece Cakeshop, Inc. and Jack Phillips, Petitioners v. Autumn Scardina, Respondent No. 23SC116
Supreme Court of Colorado, En Banc
October 8, 2024
 Certiorari to the Colorado Court of Appeals Court of Appeals Case No. 21CA1142 
 2
 Attorneys for Petitioners: James A. Campbell Jonathan A. Scruggs Jacob P. Warner Scottsdale, Arizona 
 John J. Bursch Washington, District of Columbia 
 Samuel M. Ventola Denver, Colorado 
 Attorneys for Respondent: Fennemore Craig, P.C. John M. McHugh Denver, Colorado 
 3
 Greisen Medlock, LLC Paula Greisen Scott Medlock Denver, Colorado 
 Attorneys for Amici Curiae Aaron and Melissa Klein: Jeffrey C. Mateer David J. Hacker Kassandra L. Dulin Plano, Texas 
 Kniffin Law PLLC Eric Kniffin Colorado Springs, Colorado 
 Attorneys for Amici Curiae American Civil Liberties Union Foundation and American Civil Liberties Union of Colorado: Timothy R. Macdonald Sara R. Neel Anna I. Kurtz Laura Moraff Denver, Colorado 
 Attorneys for Amici Curiae Americans United for Separation of Church and State, Bend the Arc: A Jewish Partnership for Justice, Interfaith Alliance, Methodist Federation for Social Action, National Council of Jewish Women, and Sikh Coalition: Arnold & Porter Kaye Scholer LLP Matthew J. Douglas Denver, Colorado 
 Alex J. Luchenitser Kalli A. Joslin Washington, District of Columbia 
 Attorneys for Amicus Curiae CatholicVote.org Education Fund: Illumine Legal LLC J. Brad Bergford Denver, Colorado 
 4
 Scott W. Gaylord Greensboro, North Carolina 
 Attorneys for Amicus Curiae Colorado Lesbian, Gay, Bisexual, Transgender, and Queer Chamber of Commerce: Brownstein Hyatt Farber Schreck, LLP Craig M. Finger Amalia Y. Sax-Bolder Lance T. Collins Denver, Colorado 
 Mary L. Bonauto Boston, Massachusetts 
 Attorneys for Amici Curiae Colorado LGBTQ+ Bar Association, Colorado Hispanic Bar Association, Colorado Women's Bar Association, and Asian Pacific American Bar Association of Colorado: Holland & Hart LLP Tina R. Van Bockern Thomas A. Morales Utsarga Bhattarai Elizabeth H. Titus Denver, Colorado 
 Attorneys for Amici Curiae Colorado State Legislators of the 74th General Assembly Representatives Stephanie Vigil, Lorena Garcia, Leslie Herod, Jennifer Parenti, Elizabeth Velasco, Brianna Titone, Chad Clifford, and David Ortiz: Davis Graham & Stubbs LLP Tess Hand-Bender Kristin L. Arthur Denver, Colorado 
 Attorneys for Amici Curiae Colorado State Legislators of the 74th General Assembly Senators Mark Baisley and Kevin Van Winkle and Representatives Brandi Bradley, Scott Bottoms, Ken DeGraaf, and Stephanie Luck: Arrington Law Office Barry K. Arrington Wheat Ridge, Colorado 
 5
 Attorneys for Amicus Curiae Cyndol Haller: S|L Law PLLC John C. Sullivan Cedar Hill, Texas 
 Nussbaum Gleason PLLC Andrew Nussbaum Colorado Springs, Colorado 
 Attorneys for Amici Curiae First Amendment, Constitutional, and Antidiscrimination Law Scholars Scott Skinner-Thompson, Carlos A. Ball, Erwin Chemerinsky, Alan K. Chen, G.S. Hans, Woodrow Hartzog, Jennifer Hendricks, Thomas Kadri, Suzette Malveaux, Toni Massaro, Catherine Smith, Douglas Spencer, Kyle C. Velte, Ari Ezra Waldman, and Lucy Williams: Hutchinson Black and Cook, LLC Matthew A. Simonsen Kimberly M. Hult Boulder, Colorado 
 Attorneys for Amici Curiae First Amendment Scholars George W. Dent, Jr.; David K. DeWolf; Bruce P. Frohnen; Brett G. Scharffs; and Steven D. Smith: Illumine Legal LLC Devin C. Daines Denver, Colorado 
 William C. Duncan Salt Lake City, Utah 
 Attorneys for Amici Curiae Jewish Coalition for Religious Liberty, Coalition for Jewish Values, Summit Ministries, The Colson Center for Christian Worldview, American Muslim & Multifaith Women's Empowerment Council, and World Hazara Council USA: Covenant Law PLLC Ian Speir Colorado Springs, Colorado 
 Howard Slugh Washington, District of Columbia 
 6
 Attorneys for Amicus Curiae Lambda Legal Defense and Education Fund, Inc. Karen L. Loewy Washington, District of Columbia 
 Sonja D. Kerr Dallas, Texas 
 Pelecanos Los Angeles, California 
 Attorneys for Amici Curiae Mountain States Legal Foundation, Americans for Prosperity Foundation, Southeastern Legal Foundation, and Manhattan Institute: James Kerwin William E. Trachman Lakewood, Colorado 
 Attorneys for Amici Curiae National Religious Broadcasters and Foundation for Moral Law: Brown Dunning Walker Fein Drusch PC David C. Walker Greenwood Village, Colorado 
 Michael P. Farris Washington, District of Columbia 
 Attorneys for Amici Curiae States of Arkansas, Alabama, Alaska, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, and West Virginia: Nicholas J. Bronni Dylan L. Jacobs Michael A. Cantrell Little Rock, Arkansas 
 Nicole C. Hunt Lakewood, Colorado 
 7
 Attorneys for Amici Curiae States of Massachusetts, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington: Adam M. Cambier Boston, Massachusetts 
 Olson Grimsley Kawanabe Hinchcliff & Murray LLC Eric Olson Denver, Colorado 
 Attorneys for Amici Curiae Tastries Bakery and Catharine Miller: Messall Law Firm, LLC Rebecca R. Messall Englewood, Colorado 
 Attorneys for Amicus Curiae U.S. Representative Doug Lamborn: Consovoy McCarthy PLLC J. Michael Connolly Arlington, Virginia 
 Telios Law PLLC Joseph B. Brown Theresa Sidebotham Monument, Colorado 
 JUSTICE HART delivered the Opinion of the Court, in which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, and JUSTICE SAMOUR. JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE BERKENKOTTER, dissented. 
 8
 OPINION 
 HART, JUSTICE 
 ¶1 The underlying constitutional question this case raises has become the focus of intense public debate: How should governments balance the rights of transgender individuals to be free from discrimination in places of public accommodation with the rights of religious business owners when they are operating in the public market? We cannot answer that question however, because of a threshold issue of administrative law and statutory interpretation: Could the district court properly consider the claims of discrimination presented here? In light of this dispute's procedural journey, it could not. 
 ¶2 The dispute began when Autumn Scardina requested that Masterpiece Cakeshop, Inc., owned by Jack Phillips, make her a pink cake with blue frosting to celebrate her gender transition and identity as a transgender woman. Masterpiece refused, and Scardina filed an anti-discrimination claim with the Colorado Civil Rights Division ("the Division") under section 24-34-306, C.R.S. (2024). The Division found probable cause that discrimination occurred, and after the Division's conciliation efforts failed, the Colorado Civil Rights Commission ("the Commission") took jurisdiction to hold an administrative adjudication of the claim. Once it commenced a hearing as part of this administrative proceeding, the Commission was required, absent a settlement among all the parties, to issue an 
 9
 order stating its conclusions and the reasons why its findings of fact supported those conclusions. § 24-34-306(8). 
 ¶3 In the meantime, Phillips sued both the Division and the Commission in federal court, claiming that these state agencies were discriminating against him based on his religion by pursuing Scardina's claim. Scardina moved to intervene in the federal proceedings, but the district court denied that motion. As part of a confidential settlement of the federal case, the Division and the Commission agreed-without participation by Scardina-to dismiss Scardina's administrative complaint against Masterpiece and Phillips. Pursuant to this settlement, the Commission terminated the administrative adjudication, but it did not issue the required order explaining its reasons for the dismissal. 
 ¶4 Scardina could have appealed the Commission's decision to close the administrative adjudication without providing the statutorily mandated order but she did not. Instead, she brought her discrimination claim anew in the district court. The district court took up the case and, following a bench trial, determined that Phillips had violated section 24-34-601, C.R.S. (2024), which prohibits discrimination in places of public accommodation, and imposed a fine. Phillips appealed, and the court of appeals affirmed the judgment. We granted certiorari 
 10
 to determine, among other issues, whether Scardina properly filed her case in the district court.[1] We conclude that she did not. 
 ¶5 Colorado's Anti-Discrimination Act, §§ 24-34-301 to -707, C.R.S. (2024) ("CADA"), sets very specific constraints on when a district court can consider a claim of discrimination in a place of public accommodation. The statute is designed to permit the Division to investigate and potentially resolve such claims before permitting an aggrieved individual to pursue an action in district court. To that end, the version of section 24-34-306(14), C.R.S. (2017), applicable at the time that Scardina filed her complaint required that a person exhaust any administrative remedies before filing an action in the district court.[2] And if the 
 11
 prescribed times for filing an action in the district court pass, and the Commission decides to hear and resolve a complaint through an administrative adjudication, that claim is removed from the district court path entirely. 
 ¶6 Sections 24-34-306 and -307, C.R.S. (2024), set out these two paths: either (1) administrative exhaustion followed by an action in the court system under the specific circumstances delineated by statute, or (2) administrative review followed by an administrative adjudication and judicial appeal, if requested. Scardina pursued the latter, the administrative adjudication path. However, when the Commission denied her the hearing to which she was entitled by statute, she did not appeal that denial. That choice did not entitle her to pursue the alternate path of filing a district court action. Nothing in section 24-34-306 authorized her to file the claim anew in district court. 
 ¶7 Under these circumstances, we conclude that section 24-34-306 did not permit the district court to hear this matter. We therefore vacate the decisions of the lower courts and dismiss this case. And, accordingly, we do not consider the merits of Scardina's CADA claim, nor whether Masterpiece's conduct was protected under the First Amendment. 
 I. Facts and Procedural History 
 ¶8 On June 26, 2017, Scardina called Masterpiece Cakeshop and spoke with Jack Phillips's wife, who worked at the store. Scardina requested a pink birthday 
 12
 cake with blue frosting and was told that Masterpiece would make such a cake. Scardina then explained that the cake was intended to celebrate her transition from male to female. At that point, she was informed that the shop was unlikely to make the cake "because of the message." The call disconnected, and when Scardina called back, she was again told that the shop would not make the cake. ¶9 Scardina filed a formal discrimination charge with the Division on July 21, 2017, alleging that Masterpiece Cakeshop, a place of public accommodation, had discriminated against her and refused service because she was transgender. Scardina's filing set in motion the Division's and the Commission's procedural deadlines described in section 24-34-306.[3] 
 ¶10 First, under the version of section 24-34-306(11) applicable at the time, the agencies had 270 days from the date of her filing to issue a written notice of a formal hearing, or the Commission would lose jurisdiction over the case and Scardina could file her claim in the district court. § 24-34-306(11), C.R.S. (2017). However, over the course of the proceeding, both parties (Scardina and 
 13
 Masterpiece) received 90-day extensions as permitted by statute, ultimately moving that deadline to October 13, 2018.[4] 
 ¶11 The Division investigated Scardina's claim and, almost a year later, on June 28, 2018, the Division's Director issued a probable cause determination that Masterpiece had discriminated against Scardina on the basis of her transgender status. The parties entered compulsory mediation, as required by section 24-34-306(2)(b)(II). 
 ¶12 Eventually, the Director determined that mediation was futile and referred the matter to the Commission, in accordance with statutory procedure. § 24-34-306(4). The Commission issued a Notice of Hearing and Formal Complaint ("Notice") to Phillips and Masterpiece on October 9, 2018, just days before the October 13 deadline. The Notice informed Phillips that he was to appear before an Administrative Law Judge ("ALJ") on February 4, 2019. In that administrative proceeding, the ALJ would determine whether Phillips violated 
 14
 CADA by refusing to bake the cake that Scardina had requested. This Notice triggered another deadline in section 24-34-306(11): The Commission now had 120 days to commence a hearing. If the Commission failed to do so by February 6, 2019, it would lose jurisdiction over the case. § 24-34-306(11). 
 ¶13 Shortly after receiving the Notice, on October 23, Phillips filed a complaint in federal court, alleging violations of his First Amendment rights by the Division, the Commission, and other Colorado state officials. The complaint requested injunctive, declaratory, compensatory, and punitive relief. Phillips did not name Scardina as a party. 
 ¶14 Meanwhile, in the state administrative proceeding, the ALJ granted Scardina's motion to intervene through independent counsel. The parties jointly requested that the ALJ treat the February 4 hearing as a procedural "commencement hearing," where the ALJ could address procedural issues and reschedule the merits hearing for a later date. The ALJ granted the request, and the parties appeared before the ALJ on February 4, 2019, meeting section 24-34-306(11)'s requirement that the Commission commence a hearing by, at the latest, February 6, 2019. 
 ¶15 Days after the February 4 hearing, Scardina attempted to intervene in the federal suit pursuant to Fed.R.Civ.P. 24. Phillips opposed her motion, and the Commission took no position. The court sided with Phillips, reasoning that 
 15
 intervention was unnecessary because the Commission would represent Scardina's interests in the federal litigation. Masterpiece Cakeshop Inc. v. Elenis, No. 18-cv-02074-WYD-STV, 2019 WL 9514601, at *3 (D. Colo. Feb. 28, 2019). Scardina was thus unable to participate in the federal suit. 
 ¶16 On March 5, the federal district court announced that the parties to the federal case (Masterpiece and the Colorado government) had entered a confidential settlement. Scardina was not informed of the terms of that settlement, nor are they part of the record in this case. In an emergency meeting, the Commission dismissed Scardina's charge against Masterpiece and requested that the ALJ close the case. The ALJ filed a notice of administrative closure on March 7 and vacated the August merits hearing. 
 ¶17 On March 22, the Commission filed a closure order noting that "the Commission members present [at the March 5 meeting] unanimously voted to dismiss the Notice of Hearing and Formal Complaint" against Masterpiece and further stating that the case was "now formally closed and all administrative proceedings under part 3 of article 34 of title 24, C.R.S. have been exhausted." The order did not mention the confidential settlement in the federal case or offer any explanation for the closure. 
 ¶18 On June 5, Scardina filed her discrimination claim anew in a state district court, asserting that the court was permitted to hear her claim under section 
 16
 24-34-306 because she had exhausted her administrative remedies. Scardina's discrimination claim proceeded to a bench trial. The trial court ultimately found that Masterpiece had discriminated against Scardina in a place of public accommodation, in violation of CADA. It further held that CADA did not violate the First Amendment because it did not compel speech or offend the right to free exercise of religion. The trial court granted the remedy described in section 24-34-602(1)(a), C.R.S. (2017), a $500 fine, but declined to grant any of the other forms of relief that Scardina requested in her complaint, such as damages or attorney fees. 
 ¶19 Masterpiece appealed, and a division of the court of appeals affirmed the district court's order. Scardina v. Masterpiece Cakeshop, Inc., 2023 COA 8, ¶ 93, 528 P.3d 926, 943. Masterpiece sought, and we granted, certiorari. 
 II. Applicable Law 
 ¶20 The statutory scheme that establishes the two paths for vindication of discrimination claims under CADA, including in places of public accommodation is set forth in section 24-34-306. As we will explain, that statute sets out a path for administrative adjudication and a path for judicial adjudication. While both paths start with administrative review in the Division, the statute makes it clear that once a complainant is on one adjudicatory path (either with the Commission or in the district court) there is no option to jump to the other. 
 17
 ¶21 Masterpiece has argued consistently throughout these proceedings that Scardina could not properly bring her claim before the district court. We reject the specific argument presented by Masterpiece: that an appeal pursuant to section 24-34-307, C.R.S. (2024), is part of the administrative exhaustion required by section 24-34-306(14). But the parties' dispute over the question of whether the district court could properly hear Scardina's claim under section 24-34-306 puts that question squarely before us.[5] 
 ¶22 The details involved in answering this question concern matters of statutory interpretation that we review de novo. McCoy v. People, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. Our goal in reviewing a statute is to give effect to the General Assembly's intent. Arvada Vill. Gardens LP v. Garate, 2023 CO 24, ¶ 9, 529 P.3d 105, 107. If the language is unambiguous, we apply it as written. Delta Air Lines, Inc. v. Scholle, 2021 CO 20, ¶ 13, 484 P.3d 695, 699. 
 18
 A. The Statutory Scheme Prohibiting Discrimination in Places of Public Accommodation 
 ¶23 CADA prohibits discrimination in places of public accommodations on the basis of, among other things, gender identity and gender expression. § 24-34-601(2)(a). If a person (the "complainant" or "charging party") believes that they have been discriminated against in violation of this prohibition, they have two legal options. 
 ¶24 First, they can seek the imposition of a fine in a "court of competent jurisdiction in the county where the violation occurred." § 24-34-602(1)(a). This remedy is exclusive and is "an alternative to that authorized by section 24-34-306(9)." § 24-34-602(3). The referenced "alternative"-relief under section 24-34-306-begins with an administrative review process in the Division and then leads to adjudication before the Commission[6] or, when specific statutory conditions are met, adjudication in a district court. Once the complainant starts down the administrative adjudicatory path before the Commission, appellate 
 19
 review is then available under section 24-34-307. If, instead, one of the paths to adjudication in the district court is satisfied, and the complainant elects that route, appellate review is eventually available if any party wishes to challenge the district court's final order, in accordance with the normal rules of appellate procedure. 
 ¶25 The question we confront in this case is whether the statute that sets out these two paths following administrative review-either administrative adjudication or judicial adjudication-permits shifting from one path to the other. We conclude that it does not. 
 1. Pursuing a Claim Through Administrative Review and Administrative Adjudication 
 ¶26 When a complainant files a charge of discrimination with the Division, the Division's Director and staff are required to "make a prompt investigation of the charge," which can include issuing subpoenas to witnesses and compelling the production of documents and records. § 24-34-306(2)(a). The Director then determines "as promptly as possible" whether "probable cause exists for crediting the allegations of the charge." § 24-34-306(2)(b). 
 ¶27 If the Director finds no probable cause, they must dismiss the charge, notify the parties of the decision, and state in that notice that the complainant may (1) appeal the dismissal to the Commission within ten days, or (2) file a civil action in the district court within ninety days. § 24-34-306(2)(b)(I)(A)-(B). If the complainant chooses the first option, and the Commission ultimately agrees with 
 20
 the Director and dismisses the appeal, the complainant again has ninety days to file an action in district court. § 24-34-306(2)(b)(I)(B). Thus, as we discuss further below, a no-probable-cause finding (or a Commission dismissal affirming that finding) is one of the triggers that permits the complainant to pursue adjudication of their claim in district court. § 24-34-306(2)(b)(I)(A)-(B); see, e.g., Demetry v. Colo. Civ. Rts. Comm'n, 752 P.2d 1070, 1071-72 (Colo.App. 1988) (holding that a complainant whose administrative proceeding ended with a no-probable-cause finding could not challenge that finding directly in the court of appeals, but rather should have turned to district court). 
 ¶28 If, however, the Director does find probable cause, they must "serve the respondent with written notice stating with specificity the legal authority and jurisdiction of the commission and the matters of fact and law asserted." § 24-34-306(2)(b)(II). Following that service, the Director and their designees are obligated to "order the charging party and the respondent to participate in compulsory mediation" and "shall endeavor to eliminate the discriminatory or unfair practice by conference, conciliation, and persuasion." Id. 
 ¶29 At this stage in the administrative process, agency regulations permit the Director to "resolve the charge in the public interest by entering into a conciliation agreement with the Respondent." Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.5(D)(5) (2022). As long as the Director believes the conciliation terms are 
 21
 reasonable-and even if the charging party does not accept those terms-the Director may then dismiss the charge. Id. The charging party may challenge the Director's decision by appealing to the Commission, id., and, if that challenge fails, filing an appeal in the court of appeals, see Agnello v. Adolph Coors Co., 689 P.2d 1162, 1165 (Colo.App. 1984) (upholding a settlement agreement the Division entered into during the conciliation process because it ended an employer's discriminatory practice, even though the complainant did not expressly agree to the settlement). 
 ¶30 The Director can also determine that the mediation efforts are "futile," in which case the Division must report the failure of mediation to the Commission. § 24-34-306(4). At that point, the Commission may choose to take no action at all. If that is the Commission's choice, then the administrative process has been exhausted, and, as we explain in more detail below, the complainant can request a right to sue letter and pursue their claim in district court. 
 ¶31 Alternatively, "[i]f the [C]ommission determines that the circumstances warrant" a hearing, it can issue "a written notice and complaint requiring the respondent to answer the charges at a formal hearing before the [C]ommission, a 
 22
 commissioner, or an [ALJ]."[7] Id. The notice must state "the time, place, and nature of the hearing, the legal authority and jurisdiction under which it is to be held, and the matters of fact and law asserted." Id. That hearing must commence "within [120] days after the service of [the] written notice and complaint." Id. 
 ¶32 Throughout this process in the Division and continuing into the hearing before the Commission, the complainant is a "party." See § 24-4-102(11), C.R.S. (2024) (explaining that "[p]arty" for purposes of agency adjudications includes "any person or agency named or admitted as a party"); Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.2(W) (2023) (defining "[p]arty" as "the Charging Party/Complainant and/or the Respondent"); see also Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.2(Y) (2014) (defining "[p]arty" in the same manner at the time these proceedings were taking place). Parties to the Commission's adjudicatory proceeding are entitled to an array of protections and processes. 
 ¶33 Indeed, CADA is very specific about what an administrative adjudication must include. Section 24-34-306(8) commands that the hearing comply with the general requirements for agency adjudicatory proceedings described in section 24-4-105, C.R.S. (2024). Those requirements include party input in scheduling, the 
 23
 issuance of subpoenas, the option to be represented by counsel, and other procedures that mirror adjudication in the courts. § 24-4-105(2)(a), (4)(a), (9)(a). "[E]very party to the proceeding shall have the right to present his case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." § 24-4-105(7) (emphasis added). In addition to its references to the statute that describes the general requirements for agency adjudications, section 24-34-306 includes its own procedures: discovery under the Colorado rules of civil procedure (subsection (5)), the possibility of the respondent's default with testimony by the complainant (subsection (6)), and the power to amend filings (subsection (7)). 
 ¶34 Moreover, although a complainant is not required to hire a private attorney for the hearing because the government presents "[t]he case in support of the complaint," § 24-34-306(8), the complainant has a number of statutory and regulatory rights during the hearing process. In addition to the rights mentioned above, the complainant is also entitled to "reasonably and fairly amend any complaint." § 24-34-306(7). Further, at the time Scardina filed her complaint, the Commission's General Rules Governing Hearing Procedures provided that "[i]f a party presents a motion for summary judgment, the presentation of the motion with supporting evidence may constitute the commencement of the hearing." 
 24
 Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.8(6) (2014). And if the complainant wants to hire an attorney, they can ask the ALJ for permission to additionally "intervene through counsel to present oral testimony or other evidence and to examine and cross examine witnesses." Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.8(A)(5) &(B) (2014). These statutory and regulatory procedures create an administrative adjudicatory process with significant formality and party protections. 
 ¶35 If the adjudicator ultimately decides that the respondent engaged in discriminatory acts in violation of CADA, the Commission "shall issue and cause to be served upon the respondent an order requiring such respondent to cease and desist from such discriminatory or unfair practice." § 24-34-306(9). Alternatively, if the adjudicator determines that no discrimination occurred, the Commission must issue an order dismissing the complaint. § 24-34-306(10). In either case, the adjudicator's written decision "shall . . . include a statement of the reasons why the findings of fact lead to the conclusions," a step of specificity that, once again, goes beyond the "findings and conclusions" typically required of other administrative adjudicatory decisions. Compare § 24-34-306(8), (10), with § 24-4-105(14)(a). 
 ¶36 Critically, "[a]ny complainant or respondent claiming to be aggrieved by a final order of the [C]ommission, including a refusal to issue an order, may obtain 
 25
 judicial review thereof." § 24-34-307(1). Such review "shall be brought in the court of appeals." § 24-34-307(2). 
 ¶37 In sum, a complainant seeking to file a charge of discrimination in a place of public accommodation generally begins with the Division. Under CADA, the Division has two opportunities to dispose of that charge over the complainant's objection: (1) the Division may find no probable cause for the charge, § 24-34-306(2)(b); or (2) the Division may impose a conciliation agreement with the respondent's participation, even over the objection of the complainant, provided that the Division finds the terms reasonable. Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.5(D)(5) (2022). 
 ¶38 The Commission also has an opportunity to dispose of the charge with no action. If the Division finds probable cause and is unable to establish a reasonable conciliation agreement, the Commission may unilaterally terminate the administrative process by choosing not to issue a notice of hearing and complaint. § 24-34-306(4). 
 ¶39 Once the Commission issues a notice of hearing and complaint under section 24-34-306(4), however, it has decided to demand that the respondent answer the charges originally filed by the complainant. Accordingly, sections 24-34-306(8), (9), and (10) require the Commission to complete the process it has started by, among other things, issuing an order consistent with the adjudicator's 
 26
 written decision stating why the adjudicator's findings of fact led to its conclusions. This statutory scheme does not foreclose the parties from agreeing to settle their dispute before completion of the agency adjudication, something that apparently occurs with some frequency. Colo. Off. of the State Auditor, Management of Civil Rights Discrimination Complaints 1, 9 (Aug. 2019), https:// leg.colorado.gov/sites/default/files/documents/audits/1820p_civil_rights.pdf [https://perma.cc/49PA-36TK] (noting that all eleven cases the Commission set for hearing in Fiscal Year 2018 settled before the hearing took place). 
 ¶40 But neither the statute nor the regulations permit the Commission to settle a complainant's charge of discrimination with a respondent of its own accord without the complainant's participation. Instead, absent an agreement among all the parties, section 24-34-306(4)-(10) requires the process the statute describes. If the parties do not receive that process, or if any party finds the results unfavorable, they may appeal pursuant to section 24-34-307. 
 2. Pursuing a Claim Through Administrative Review and District Court Adjudication 
 ¶41 Section 24-34-306 provides four well-defined off-ramps from initial administrative review by the Division to merits litigation in the district court. 
 ¶42 Before any of those off-ramps is available, however, section 24-34-306(14) explains that "[n]o person may file a civil action in a district court" based on conduct prohibited by the statute "without first exhausting the proceedings and 
 27
 remedies available to him under this part 3 unless he shows . . . his ill health which is of such a nature that pursuing administrative remedies would not provide timely and reasonable relief and would cause irreparable harm." This exhaustion requirement is designed to ensure that the Division has an opportunity to investigate and resolve the claim before a complainant turns to the courts for resolution.[8] Exhaustion requirements are standard in agency practice and serve the important purposes of "protecting agency authority in the administrative process and 'promoting] efficiency' in the resolution of claims." Stewart v. lancu, 912 F.3d 693, 699 (4th Cir. 2019) (alteration in original) (quoting Woodford v. Ngo, 548 U.S. 81, 89 (2006)) (explaining the importance of administrative exhaustion requirements in federal Title VII claims, upon which CADA's procedures are based). 
 ¶43 However, the General Assembly recognized that agency investigation and conciliation efforts can be inefficient and lengthy, so it established several 
 28
 circumstances that have the effect of exhaustion under section 24-34-306(14) and permit the district court to hear a claim. The earliest off-ramp to the district court is one a complainant can take any time after 180 days under section 24-34-306(15). Under that subsection, after 180 days have passed since a charge was initially filed, if the complainant requests a right to sue letter, "the division shall promptly grant" that request-so long as the Commission has not served a notice of a formal hearing, thereby signaling that it will take up the claim. Id. The grant of a right to sue letter "shall constitute final agency action and exhaustion of administrative remedies." Id. The complainant then has ninety days to file following receipt of the right to sue letter, or an action in the district court is barred. § 24-34-306(11).[9] 
 ¶44 A second path to the district court opens if the Director concludes that there is no probable cause to support the claim. In this situation, section 24-34-306(2) requires the Director to notify the charging party that they can file "a civil action in a district court in this state based on the alleged discriminatory or unfair practice 
 29
 that was the subject of the charge filed with the commission," but that such a claim must be filed within ninety days. The statute also clarifies that failure to follow this timeline means that "the action will be barred, and no district court shall have jurisdiction to hear the action." § 24-34-306(2)(b)(I)(C). 
 ¶45 Third, under the version of the statute in effect at the time of Scardina's complaint, if the Director did not serve the respondent with a written notice of a formal hearing under section 24-34-306(4) within 270 days of the initial charge being filed, the Commission's jurisdiction ceased, and the charging party could file a complaint in the district court. § 24-34-306(11). The parties could, "for good cause," obtain extensions of this 270-day timeline, not to exceed ninety days per party or 180 days overall (meaning that the timeline could not, in any circumstance, be extended past 450 days). Id.[10] If that timeline passed without the Commission taking jurisdiction by serving notice of a formal hearing, the Commission lost its jurisdiction over the complaint. In that case, a district court complaint must be filed within ninety days of the Commission's loss of jurisdiction, or the action would be barred in the district court. Id. 
 ¶46 Fourth, if the Commission does not hold a hearing within 120 days following the issuance of a notice of a formal hearing under section 24-34-306(4), 
 30
 the Commission loses jurisdiction, and the charging party may file a complaint in the district court. § 24-34-306(11). As with service of the written notice, the parties may ask for extensions to this time for good cause, not to exceed ninety days per party or 180 days collectively. § 24-34-306(11). The charging party has ninety days following the deadline to file an action in the district court, or the action is barred in the district court. Id. 
 ¶47 These provisions of section 24-34-306 are unambiguous. Subsections 306(2), 306(11), and 306(15) establish the General Assembly's intent to impose a strict timeline on when complainants may pursue their case in the district court following either (1) a finding of no probable cause by the Director, or (2) termination of the Commission's exclusive powers over a claim for failure to meet a statutory deadline. Each provision describes a situation where the district court may consider a claim of discrimination because the administrative agencies' ability to do so has ceased, with the "apparent purpose of . . . avoid[ing] duplicative and possibly conflicting attempts to pursue relief both in the district court and before the Commission." Cont'l Title Co. v. Dist. Ct., 645 P.2d 1310, 1316 (Colo. 1982). 
 ¶48 Significantly, the specificity of the conditions each provision sets forth necessarily implies that complainants may not file absent those conditions. It would make little sense for the General Assembly to restrict access to district 
 31
 courts to complainants who find themselves in certain circumstances if litigants had a general right, external to the statute, to pursue their case in the district court absent those circumstances. 
 III. Application 
 ¶49 Irrespective of the merits of Scardina's claim, the district court here was not permitted to consider her case. Masterpiece has argued as much throughout this litigation, though for reasons slightly different than those we rest on here. When we are interpreting statutes, we are not obligated to adopt the parties' interpretations that are contrary to the text of the statute and the intent of the General Assembly. Rather, we have an obligation to interpret and apply the law. In this case, having been steered in this direction by Masterpiece's arguments that Scardina improperly filed her claim anew in the district court, we must address the fact that section 24-34-306 did not authorize the district court to hear this case. As noted above, section 24-34-306 authorizes complainants to pursue their case in the district court in four circumstances. The proceedings here did not trigger any of those circumstances. 
 ¶50 First, Scardina could have requested a right to sue letter any time after 180 days from when she filed her initial charge, up to the day the Commission served the notice of a formal hearing. § 24-34-306(11), (15). Scardina never requested or 
 32
 received such a letter, so she could not have filed an action in the district court under this provision. 
 ¶51 Second, section 24-34-306(2) permits filing an action in the district court when the Director makes an initial finding of no probable cause. But the Director here found probable cause to investigate Scardina's claim, so Scardina could not have filed an action pursuant to section 24-34-306(2). 
 ¶52 Third, section 24-34-306(11) at that time permitted filing an action in the district court when the Commission failed to issue a notice of hearing within 270 days of the initial charge. While the Commission sent the notice more than 270 days after the initial charge, the parties had obtained extensions (pursuant to section 24-34-306(11)) which placed the October 8 notice of hearing date within the statutory deadline. 
 ¶53 Finally, section 24-34-306(11) permits filing an action in the district court when the Commission fails to commence a hearing within 120 days of the initial notice of hearing. In this case, an ALJ held a commencement hearing within the statutory deadline. Though the hearing was not substantive, it was still "a hearing," satisfying section 24-34-306(11)'s requirement and ensuring that the Commission retained jurisdiction over the case. 
 ¶54 At no point did the Commission's or Scardina's actions trigger one of the avenues that section 24-34-306 provides for filing a district court case. But Scardina 
 33
 argues, and the court of appeals concluded, that the order the Commission issued when it dismissed the formal complaint against Masterpiece allowed Scardina to bring her claim in the district court. 
 ¶55 One version of the argument Scardina makes is that the closure order satisfied subsection 306(14)'s administrative exhaustion requirement, thereby giving her the right to file an action in the district court, because the order stated that the case was "now formally closed and all administrative proceedings under part 3 of article 34 of title 24, C.R.S. have been exhausted." The flaw in this argument is that subsection 306(14) does not grant an affirmative right-as it might if it were worded like subsections 306(2) and 306(11), which explicitly permit complainants to file a civil action in the district court under the circumstances those statutes describe. Instead, subsection 306(14) explains that administrative exhaustion is a prerequisite to a district court case. Compare § 24-34-306(11), C.R.S. (2017) ("[i]f written notice that a formal hearing will be held is not served within two hundred seventy days after the filing of the charge . . . the jurisdiction of the commission over the complaint shall cease, and the complainant may seek the relief authorized . . . by filing a civil action in the district court for the district in which the alleged discriminatory or unfair practice occurred"), with § 24-34-306(14), C.R.S. (2017) ("[n]o person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice . . . without first 
 34
 exhausting the proceedings and remedies available to him under this part 3 ...."). Thus, administrative exhaustion is necessary, but not sufficient. As explained above, subsection 306 sets out additional requirements before the district court may hear a claim. 
 ¶56 Another version of this argument is that the closure order was effectively a right to sue letter. Again, this argument fails. Section 24-34-306(15) explicitly states that a right to sue letter can be requested "at any time prior to service of a notice and complaint pursuant to subsection (4) of this section." In other words, once the Commission has taken up a claim by serving notice of a hearing, a complainant cannot request and neither the Division nor the Commission can issue a right to sue letter. At that point, the statute provides unambiguously that the path to the district court is closed, with only one exception: if the hearing is not held promptly. § 24-34-306(11). 
 ¶57 A third version of the argument is that the Commission's order was not a final order because a final order must do more than this summary dismissal did. See Scardina, ¶24, 528 P.3d at 933 ("A final judgment is one 'which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved.'" (quoting D.H. v. People, 561 P.2d 5, 6 (Colo. 1977))). Even assuming we agreed with this characterization of the Commission's order, section 24-34-307(1) 
 35
 also permits a "complainant" to challenge the Commission's "refusal to issue an order" in the court of appeals. Under these circumstances, the Commission's closure order represents the culmination of just such a refusal. 
 ¶58 Specifically, the Commission entered into a confidential settlement in federal court, without Scardina's participation, in possible violation of its statutory obligation to hold a merits hearing on a discrimination claim and to issue an order resolving that claim in accordance with section 24-34-306(8)-(10). This occurred after the Commission notified the respondent that there would be an ALJ adjudication and after the ALJ granted Scardina's motion to intervene through counsel in that adjudication. Thus, Scardina was entitled to the administrative processes described in sections 24-34-306(5)-(10), unless she settled the case with Masterpiece. The Commission's issuance of a closure order deprived her of that process and any potential administrative remedy or settlement. 
 ¶59 We conclude that these circumstances amount to the kind of "refusal to issue an order" that section 24-34-307(1) contemplates. Accordingly, Scardina had a statutorily established path to challenge the Commission's actions: she could have turned to the court of appeals to contest the Commission's dismissal of her case as part of a binding settlement in federal court, where she was not a party. We express no view on the merits of these claims; we only acknowledge that Scardina possessed an avenue for judicial review in the court of appeals. 
 36
 IV. Conclusion 
 ¶60 CADA is not ambiguous. It is quite clear about when a litigant may file an action in the district court. The litigant can ask for and receive a right to sue letter; the Division can issue a finding of no probable cause; the Commission can fail to issue a notice of a formal hearing within 270 days of the filing of a charge; or the Commission, having noticed a hearing, can delay the hearing more than 120 days. In the absence of those specific circumstances, a litigant cannot file a CADA action in the district court. 
 ¶61 None of the circumstances that permit an action in the district court occurred here. We therefore vacate both the division's and the district court's orders and dismiss this case. In so doing, we express no opinion about the merits of Scardina's claims, and nothing about today's holding alters the protections afforded by CADA. 
 ¶62 JUSTICE HART delivered the Opinion of the Court, in which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, and JUSTICE SAMOUR joined. JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE BERKENKOTTER, dissented. 
 37
 JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE BERKENKOTTER, dissenting. 
 ¶63 Autumn Scardina called Masterpiece Cakeshop, Inc. to order a custom birthday cake. Specifically, she asked if Masterpiece could make her a pink cake with blue frosting, a type of cake that Masterpiece's co-owner, Jack Phillips, later agreed has no inherent meaning and expresses no message. Masterpiece agreed to make the cake. But then, Scardina said that the cake reflected the fact that she had come out as transgender on her birthday. At that point, Masterpiece refused to make the cake. 
 ¶64 On these undisputed facts, every factfinder and judicial officer to have heard this case concluded that (1) Masterpiece's conduct violated the Colorado Antidiscrimination Act, §§ 24-34-601 to -605, C.R.S. (2024) ("CADA"), because but for Scardina's protected status, Masterpiece would have made the cake; and (2) enforcing CADA in these circumstances would not violate Phillips's rights to free speech or the free exercise of his religious beliefs. Masterpiece then came to this court, asking us to reverse those rulings. 
 ¶65 The majority now declines to reach the merits of this case. Instead, it erroneously gives Masterpiece and Phillips a procedural pass. It does so by concluding that the district court lacked the authority to hear Scardina's case, relying on reasoning that no party presented in this case (even after we issued an order requiring supplemental briefing on the question of the court's authority) and 
 38
 all but ignoring the argument that the parties actually presented to us, namely, that Scardina had failed to exhaust her administrative remedies. (To the extent that the majority addresses the exhaustion argument presented by Masterpiece and Phillips, it rejects that argument. Maj. op. ¶¶ 21, 42 n.8.) 
 ¶66 The ramifications of the majority's ruling are troubling on many levels. Procedurally, the majority adopts an unprecedented administrative regime under which, once a merits hearing is set, (1) a district court can never hear the matter; and (2) an administrative agency may never settle the matter over a claimant's objection, no matter how unreasonable that objection may be, but instead must litigate the matter to its conclusion. In my view, neither law nor sound policy supports such a conclusion. 
 ¶67 Substantively, the majority's ruling throws Scardina completely out of court and deprives her of the opportunity to seek a remedy for alleged discriminatory conduct based on a novel interpretation of law that no party asserted and, to my knowledge, no court has adopted. Moreover, although the majority rules solely on procedural grounds, I am concerned that Masterpiece and Phillips will construe today's ruling as a vindication of their refusal to sell non-expressive products with no intrinsic meaning to customers who are members of a protected class (here, the LGBTQ+ community) if Phillips opposes the purpose for which the customers will 
 39
 use the products. Such a claim, though unfounded, could detrimentally impact those affected by such conduct. 
 ¶68 Because I have significant concerns about the foregoing substantive and procedural consequences of the majority's ruling, I respectfully dissent. 
 I. Factual and Procedural Background 
 ¶69 Scardina called Masterpiece to order a cake. Masterpiece's co-owner and Phillips's wife, Debra, answered the phone. Scardina told Ms. Phillips that she wanted to purchase a custom birthday cake for six to eight people and that she wanted the cake to be pink with blue frosting. She did not request that the cake have any words or symbols. Ms. Phillips responded that Masterpiece could make that cake in the time frame requested. 
 ¶70 Scardina thanked Ms. Phillips and then explained that the design reflected the fact that Scardina had transitioned from male to female and had come out as transgender on her birthday. At this point, Ms. Phillips changed her position and stated that Masterpiece could not make the requested cake. Scardina asked Ms. Phillips to repeat what she had said so that Scardina's brother, with whom she was riding in a car, could hear it. At that point, Ms. Phillips went to get Phillips, but the call disconnected before Phillips could get on the phone. 
 ¶71 Scardina immediately called back, and she spoke with the Phillips's daughter, Lisa Eldfrick. Scardina reiterated her request for a custom pink cake 
 40
 with blue frosting, and she repeated that she was requesting this cake because her birthday coincided with the date on which she came out as transgender. Ms. Eldfrick responded that Masterpiece could not make the requested cake. 
 ¶72 Although Phillips never spoke to Scardina, he later explained that because of his religious beliefs, he cannot design cakes that promote sex changes, gender transitions, or "the idea that a person's sex is anything other than an immutable God-given biological reality." He thus confirmed that he could not make the requested cake for Scardina, even though he conceded that a pink cake with blue frosting itself has no "particular inherent meaning" and does not express any message. It appears undisputed that Phillips would have made the same pink and blue cake for other customers and would have sold an identical, pre-made cake (as opposed to a custom-made cake) to Scardina, even if she had disclosed her intended use of the cake. 
 ¶73 On July 21, 2017, Scardina filed a charge with the Colorado Civil Rights Division (the "Division"), alleging that Masterpiece and Phillips had violated CADA by refusing to sell her a custom pink cake with blue frosting because of her status as a transgender woman. The Division investigated and on June 28, 2018, found probable cause to conclude that Masterpiece's and Phillips's conduct violated CADA because they had refused to serve Scardina based on her 
 41
 transgender status. The Division then ordered the parties to mediate, but the mediation was ultimately unsuccessful. 
 ¶74 Thereafter, on August 14, 2018, Masterpiece and Phillips sued the director and members of the Division, among others, in federal court. Then, two months later, on October 9, 2018, the Commission filed and served on Masterpiece and Phillips a Notice of Hearing and Formal Complaint seeking equitable relief. This notice was timely, given that the parties had requested extensions of the deadline for issuing the notice, which extensions the Colorado Civil Rights Commission (the "Commission") was authorized to grant under the version of CADA then in effect. See § 24-34-306(11), C.R.S. (2019). 
 ¶75 Shortly after the Commission filed its Notice of Hearing and Formal Complaint, Scardina filed a motion for leave to intervene in the administrative proceeding, and the Commission granted that motion. Notably, as an intervenor, Scardina could not bring a claim in her individual capacity, but her counsel could present oral testimony or other evidence and could examine and cross-examine witnesses at the hearing on the merits, if any, in this matter. Dep't of Regul. Agencies, 3 Colo. Code Regs. 708-1:10.7(A)(5) (2023) (previously numbered 708-1:10.8(A)(5)). 
 ¶76 Thereafter, on February 4, 2019, the Commission conducted what it called a "Commencement Hearing" and set the merits hearing for August 28, 2019. The 
 42
 parties apparently agreed to a Commencement Hearing to satisfy the 120-day deadline for commencing a hearing after a notice of hearing and formal complaint are served. § 24-34-306(4), C.R.S. (2024) (unless otherwise noted, citations to section 24-34-306 are to those portions of the current version of the statute that were also in effect at the times relevant to this case). 
 ¶77 In the meantime, Masterpiece's federal lawsuit proceeded, and on February 8, 2019, Scardina filed a motion for leave to intervene in that case. Masterpiece, however, opposed Scardina's motion, arguing that any interest that she might have in the proceeding was merely incidental. The federal district court denied the motion, concluding that the Division could properly represent Scardina's interests. 
 ¶78 About one month later, the Division and Masterpiece reached a confidential settlement of the federal lawsuit. Scardina was not a party to that settlement, she apparently was not aware that it was occurring, and it appears that, to this day, the terms of the settlement have not been disclosed to her. Nor have they been disclosed to us. 
 ¶79 On March 5, 2019, presumably in accordance with the terms of the Division's and Masterpiece's settlement agreement, the Commission conducted an emergency meeting and decided to dismiss with prejudice its Notice of Hearing 
 43
 and Formal Complaint in this matter. Scardina was not informed of this meeting until after it had occurred. 
 ¶80 That same day, the Attorney General filed a Notice of Dismissal and Petition for Administrative Closure, and two days later, the administrative law judge ("ALJ") assigned to this case issued an Order of Administrative Closure. In this Order, the ALJ noted that the Commission had voted to dismiss with prejudice its administrative complaint. Accordingly, after observing that "[t]here is . . . no need for any further proceedings before the Office of Administrative Courts," the ALJ administratively closed the matter and vacated the merits hearing that had been scheduled to begin on August 28, 2019. 
 ¶81 Two weeks later, on March 22, 2019, the Commission entered a Closure Order, recounting that the Commission had voted to dismiss its formal complaint and stating that the matter is now "formally closed." This order further declared, "[A]ll administrative proceedings under part 3 of article 34 of title 24, C.R.S. have been exhausted." At no time did Masterpiece or Phillips challenge the Commission's finding in this regard (or its right to make that finding), although before us, they have advanced a legal argument that Scardina did not, in fact, exhaust her administrative remedies. 
 ¶82 Scardina then filed the present lawsuit in the Denver District Court. Masterpiece and Phillips moved to dismiss on the ground that Scardina had failed 
 44
 to exhaust her administrative remedies, but the district court denied that motion, and the case proceeded to a bench trial. At the conclusion of the trial, the court found that Masterpiece and Phillips had violated CADA by refusing to serve Scardina because of her transgender status. The court further found that enforcing CADA in the circumstances presented did not violate Masterpiece's or Phillips's rights to free speech or religious expression. 
 ¶83 Masterpiece and Phillips appealed, reiterating their argument that Scardina had failed to exhaust her administrative remedies and contending that their decision not to make the cake that Scardina had requested was based on their religious beliefs and their right to be free from compelled speech that would violate those beliefs. Scardina v. Masterpiece Cakeshop, Inc., 2023 COA 8, ¶¶ 1-2, 528 P.3d 926, 930. In a unanimous, published opinion, a division of our court of appeals rejected Masterpiece's and Phillips's exhaustion argument and affirmed the district court's judgment on the merits. Id. at ¶¶ 1, 21-28, 93, 528 P.3d at 930, 933-34, 943. 
 ¶84 We then granted certiorari, and after receiving the parties' briefs and hearing their oral arguments, we requested supplemental briefing, asking the parties to file briefs addressing, among other things, "whether, given the deadlines set forth in the version of section 24-4-306, C.R.S. in effect at the relevant time, the district court had jurisdiction to hear Ms. Scardina's claim of discrimination." The 
 45
 parties thereafter filed supplemental opening and answer briefs. None of these supplemental briefs raised or addressed the argument on which the majority today relies to conclude that the district court lacked the authority to decide this case. Instead, as pertinent here, Masterpiece and Phillips simply renewed their argument that Scardina had failed to exhaust her administrative remedies, and for that reason, the district court lacked the authority to hear this case. 
 II. Analysis 
 ¶85 I begin with a brief discussion of the party presentation principle, and I note my concern regarding the majority's decision to dispose of this case based on an argument that no party has presented. I then address the majority's position regarding the district court's authority to hear this case, explaining why I believe that the district court had such authority. I end by addressing and rejecting the exhaustion argument that the parties presented, and I explain why I believe we should have reached the merits here. 
 A. The Party Presentation Principle 
 ¶86 The Supreme Court has succinctly described the party presentation principle: 
 
 In our adversary system, in both civil and criminal cases, in
 the first instance and on appeal, we follow the principle of
 party presentation. That is, we rely on the parties to frame
 the issues for decision and assign to courts the role of
 neutral arbiter of matters the parties present.... [A]s a
 general rule, "[o]ur adversary system is designed around
 the premise that the parties know what is best for them, and
 
 46
 
 are responsible for advancing the facts and arguments
 entitling them to relief."
 
 ¶87 Greenlaw v. United States, 554 U.S. 237, 243-44 (2008) (second alteration in original) (quoting Castro v. United States, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)); accord United States v. Sineneng-Smith, 590 U.S. 371, 375-76 (2020); Compos v. People, 2021 CO 19, ¶ 35, 484 P.3d 159, 165. 
 ¶88 The party presentation principle not only ensures that courts will exercise judicial restraint and maintain neutrality in deciding cases but also protects due-process interests by affording a party notice and a full and fair opportunity to be heard before a court decides an issue adversely to that party. See United States v. Campbell, 26 F.4th 860, 895 (11th Cir. 2022) (Newsom and Jordan, JJ., dissenting). 
 ¶89 Here, as noted above, and as the majority concedes, Maj. op. ¶¶ 21, 49, Masterpiece and Phillips did not make the argument on which the majority relies, even after we issued an order requiring that they submit supplemental briefing addressing the district court's authority in light of the applicable statutes. In such a case, I believe that it is particularly important for a court not to raise and rely on arguments of its own derivation, so as not to open itself to questions about its proper role or neutrality. 
 ¶90 Nor do I believe that we can justify ruling on the basis of an argument that no one made by labeling the issue "jurisdictional." To be sure, when a question 
 47
 exists as to our or a trial court's subject matter jurisdiction, we have an obligation to address it, even if the parties have not raised it or are prepared to concede jurisdiction. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); People v. S.X.G., 2012 CO 5, ¶ 9, 269 P.3d 735, 737. This is because we must satisfy ourselves that we have jurisdiction to hear and act in a given case. S.X.G., ¶ 9, 269 P.3d at 737. 
 ¶91 As the majority appears to acknowledge, however, Maj. op. ¶ 21 n.5, this case presents no question of either our or the district court's subject matter jurisdiction. "Subject matter jurisdiction concerns a court's authority to deal with the class of cases in which it renders judgment." Wood v. People, 255 P.3d 1136, 1140 (Colo. 2011). A court has subject matter jurisdiction when the People or the legislature have empowered the court to entertain the type of case before it. Id. In this state, district courts are courts of general jurisdiction, and they have original jurisdiction in "all civil, probate, and criminal cases, except as otherwise provided" in the Colorado Constitution. Colo. Const. art. VI, § 9(1). Moreover, although the legislature may limit courts' subject matter jurisdiction, "such limitations must be explicit." Wood, 255 P.3d at 1140. 
 ¶92 Here, the Colorado Constitution granted the district court subject matter jurisdiction to hear this case. Moreover, nothing in CADA (or anywhere else) explicitly limited the district court's subject matter jurisdiction over this case. 
 48
 Accordingly, in my view, this case does not implicate any question of the district court's subject matter jurisdiction. At most, it implicates that court's authority to enter a judgment within a class of cases that it was empowered to entertain. See People in Int. of J.W. v. C.O., 2017 CO 105, ¶¶ 24-25, 406 P.3d 853, 858-59 (distinguishing between a court's subject matter jurisdiction over a class of cases and its authority to enter a particular judgment within that class, and noting that when a case falls within the class of cases that a court may hear, the court has subject matter jurisdiction over the case). I am aware of no authority, however, requiring us to raise, on our own, the issue of a court's authority to enter a judgment in a class of cases in which it has subject matter jurisdiction. 
 ¶93 Finally, I am unpersuaded by the majority's assertion that when we interpret a statute, we have an obligation to interpret the statute correctly, even if the party did not raise an issue regarding the matter on which the court decides to opine. Maj. op. ¶ 49. I understand and appreciate the majority's concern about issuing an opinion reciting an erroneous statutory construction. But here, because no party has asked us to opine on the issue that the majority raises on its own, addressing only the issues that the parties raised poses no risk of enshrining an erroneous construction of CADA into our case law. Indeed, because no party raised the issue on which the majority's decision rests, this case strikes me as a poor vehicle for addressing that issue. In addition, for the reasons that I discuss 
 49
 below, I respectfully believe that it is the majority's interpretation that enshrines an error into law. And the majority's creation of what appears to be a duty-to-get-it-right exception to the party presentation principle (or an exception that allows the court to address any issue that it would like, as long as the party steered the court in a certain direction, id.) creates a substantial loophole in the party presentation principle and dramatically alters long-settled tenets of preservation and waiver. I would not adopt such exceptions, for fear that they will swallow the rule. 
 ¶94 For these reasons, I do not believe that it was appropriate for the majority to rule on the basis of an argument that no party presented, and for that reason alone, I respectfully dissent. 
 B. The District Court Had the Authority to Hear This Case 
 ¶95 Even had I thought it appropriate for us to address the issue of the district court's authority that the majority raised and resolved on its own, I would conclude that the district court had the authority to entertain this case and to enter the judgment that it did. 
 ¶96 The majority concludes that once the Commission decides to hold an administrative hearing, Scardina could no longer file suit in district court. Maj. op. ¶¶ 6, 20. Accordingly, in the majority's view, after the Commission and Masterpiece settled the claim without Scardina's knowledge or consent and the 
 50
 Commission dismissed the matter with prejudice and concluded that Scardina had exhausted her administrative remedies, Scardina's only option was to appeal the Commission's failure to enter a ruling on the merits of her claim. Id. at ¶¶ 6, 59. In my view, this conclusion is not supported by the text of CADA, and it is contrary to sound public policy. 
 ¶97 Section 24-34-306 expressly states when the jurisdiction of the Commission and of the district court come to an end. 
 ¶98 Specifically, section 24-34-306(2)(b)(I)(C) provides that "if the charging party does not file an action within the time limits specified in sub-subparagraph (B) of this subparagraph (I) [setting forth the deadlines by which a charging party must file a civil action after the Division makes a no probable cause determination], the action will be barred, and no district court shall have jurisdiction to hear the action." (Emphasis added.) 
 ¶99 Section 24-34-306(11), C.R.S. (2019), in turn, provided, at the time pertinent here: 
 
 If written notice that a formal hearing will be held is not
 served within two hundred seventy days after the filing of
 the charge, if the complainant has requested and received a
 notice of right to sue pursuant to subsection (15) of this
 section, or if the hearing is not commenced within the
 one-hundred-twenty-day period prescribed by subsection (4) of
 this section, the jurisdiction of the commission over the
 complaint shall cease, and the complainant may seek the
 relief authorized under this part 3 and parts 4 to 7 of this
 article against the respondent by filing a civil action in
 the district court for the district in which the alleged
 discriminatory or unfair practice occurred. Such
 
 51
 
 action must be filed within ninety days of the date upon
 which the jurisdiction of the commission ceased, and if not
 so filed, it shall be barred and the district court shall
 have no jurisdiction to hear such action. If any party
 requests the extension of any time period prescribed by this
 subsection (11), such extension may be granted for good cause
 by the commission, a commissioner, or the administrative law
 judge, as the case may be, but the total period of all such
 extensions to either the respondent or the complainant shall
 not exceed ninety days each, and, in the case of multiple
 parties, the total period of all extensions shall not exceed
 one hundred eighty days.
 
 (Emphases added.) 
 ¶100 Here, as noted above, the Division found probable cause to support Scardina's claim, so section 24-34-306(2)(b)(I)(C) does not apply, and that section did not deprive the district court of jurisdiction or of the authority to hear this case. In addition, it appears undisputed that the Commission timely served a notice of hearing and formal complaint, after several extensions that were expressly authorized by section 24-34-306(11), C.R.S. (2019); Scardina never requested or received a notice of a right to sue under that subsection; and the hearing was commenced within that subsection's 120-day time limit. Accordingly, none of these provisions operated to end the Commission's jurisdiction. Nor did they start the clock for filing a civil action in district court. As a result, in my view, the Commission retained jurisdiction until March 22, 2019, when it dismissed Scardina's case with prejudice, concluded that she had exhausted her administrative remedies, and closed the matter. It is only then, at the earliest, that 
 52
 the time for Scardina to file her lawsuit in the Denver District Court began to run, and she timely filed that action within ninety days. 
 ¶101 For several reasons, I am not persuaded otherwise by the majority's view that the district court lost (or could never obtain) the authority to hear this case once the Commission set a hearing on the merits of Scardina's claim. 
 ¶102 First, nothing in either CADA or its implementing regulations says any such thing. To the contrary, as noted above, CADA and its regulations expressly state when the jurisdiction or authority of the Commission and of the district court ceases or is precluded, and none of those provisions apply here. The majority nevertheless reads into these express (albeit inapplicable) limitations what it deems to be a further, implicit, limitation, namely, that section 24-34-306 provides the exclusive means by which a district court obtains the authority to hear a case like this. Maj. op. ¶¶ 48, 54. The majority, however, offers no support for its view that an express limitation of authority somehow implies an exclusive grant of authority, and I have seen no law supporting such a position. To the contrary, in my view, the majority's novel interpretation flips the statutory language on its head. 
 ¶103 Second, the majority's conclusion is contrary to sound public policy. Under the majority's view, once the Commission issues a notice of hearing and complaint, it may never settle a claim and dismiss its own complaint, absent the charging 
 53
 party's knowledge, participation, and consent. Id. at ¶ 40. Further, a charging party can force an administrative agency to proceed through a hearing and to a merits decision simply by stubbornly refusing to consent to a settlement, no matter how reasonable the agency acted on the facts before it. See id. I perceive nothing in CADA or its implementing regulations that so provides, and neither Masterpiece nor the majority cites any authority to support such an argument. Moreover, in my view, these outcomes would result in a substantial waste of administrative resources, and I cannot discern a legitimate policy rationale for such a result. Indeed, I expect that administrative agencies throughout Colorado will be quite surprised (and perhaps alarmed) to learn that their authority to settle actions has now been so significantly curtailed. 
 ¶104 Contrary to my colleagues in the majority, I would not adopt such a rule. Rather, I believe that sound public policy supports authorizing administrative agencies to resolve matters before them, even over a charging party's objection, and then allowing that party to pursue their claim in district court. Such a procedure best ensures a prompt result on the merits, which I believe is the end to which CADA and its implementing regulations are directed. See Brooke v. Rest. Servs., Inc., 906 P.2d 66, 71 (Colo. 1995) (noting that CADA's primary purpose is to eliminate unfair or discriminatory practices defined in that statute). 
 54
 ¶105 Third, although the majority concludes that Scardina should have appealed from the Commission's order dismissing and closing her case, I do not believe that the law supports such a conclusion. Moreover, in my view, the court of appeals would not have had jurisdiction over any such appeal, and even if it did, it is not clear to me what that appeal would have entailed. 
 ¶106 Specifically, in support of its argument that Scardina should have filed an appeal in the court of appeals, the majority cites sections 24-34-307(1) and (2), C.R.S. (2017), which provide that a complainant aggrieved by "a final order of the commission, including a refusal to issue an order, may obtain judicial review thereof," with such review to be sought in the court of appeals. Maj. op. ¶ 36. As the majority appears to acknowledge, however, the Commission's order was not a final order. See id. at ¶¶ 57-59. Indeed, the gist of the majority's ruling appears to be that Scardina should have appealed to the court of appeals precisely because she never received a final order on the merits from the Commission. See id. at ¶ 59. Nor do I agree that the Commission's order was a "refusal to issue an order." See id. The Commission did issue an order, namely, an order dismissing the case and concluding that Scardina had exhausted her administrative remedies, thereby ending the matter. Accordingly, I do not believe that sections 24-34-307(1)-(2) support the majority's position here. 
 55
 ¶107 In any event, because the Commission's dismissal and closure orders were not final orders, the court of appeals would not have had jurisdiction to hear an appeal had Scardina filed one. 
 ¶108 In this regard, I believe that Demetry v. Colorado Civil Rights Commission, 752 P.2d 1070 (Colo.App. 1988), which has been on the books for nearly forty years, is directly on point. In that case, the director of the Division found no probable cause to sustain Demetry's charge of discrimination, the Commission affirmed, and Demetry appealed. Id. at 1070. Although the no probable cause determination and the Commission's decision to affirm that determination ended all of the administrative proceedings in that case, the Commission contended that its decision to affirm the no probable cause determination did not constitute final agency action subject to appellate review and thus, the court of appeals division lacked jurisdiction over Demetry's appeal. Id. at 1071. The division agreed. Id. 
 ¶109 The division so concluded notwithstanding the fact that the charging party was a complainant who was obviously aggrieved, id., as the majority says Scardina was here, Maj. op. ¶ 36. The division reasoned that "[f]or an order to be final, it must have some determinative consequences for the party to the proceeding." Demetry, 752 P.2d at 1071. In other words, "[t]he order must establish the rights and obligations of the parties." Id. 
 56
 ¶110 In support of this conclusion, the division looked to federal case law construing Title VII of the Civil Rights Act of 1964 and observed that the purpose of any investigation by the federal Equal Employment Opportunity Commission ("EEOC") was "merely preparatory to further proceedings." Id. at 1071-72. Thus, the division opined, if the EEOC finds no probable cause, then the charging party may bring a private cause of action. Id. at 1072. 
 ¶111 The division found this reasoning to be equally applicable to the CADA claim before it. Id. Specifically, the division observed that the Commission's decision not to prosecute Demetry's discrimination charge administratively bore "no indicia of a final order. There has been no hearing on, or adjudication of, the merits of the charge, nor has there been a determination of the legal rights of the employer and employee." Id. Thus, because there had been no final decision that would afford the court of appeals division jurisdiction to hear the matter, the Commission's decision did not affect Demetry's right to bring an action in district court under section 24-34-306(11), C.R.S. (2019). See Demetry, 752 P.2d at 1072. 
 ¶112 In my view, the same reasoning applies in this case. Here, as in Demetry, the Commission's dismissal and closure orders did not determine the legal rights of either Masterpiece or Scardina. Nor did those orders bear any indicia of finality because, as in Demetry, there had been "no hearing on, or adjudication of, the merits of the charge." Id. 
 57
 ¶113 Accordingly, Scardina could not have pursued the appeal to the court of appeals that the majority says she should have filed because that court would not have had jurisdiction to hear such an appeal. 
 ¶114 In so concluding, I am not persuaded otherwise by Masterpiece's and Phillips's reliance on Agnello v. Adolph Coors Co., 689 P.2d 1162 (Colo.App. 1984) ("Agnello I"), and Agnello v. Adolph Coors Co., 695 P.2d 311 (Colo.App. 1984) ("Agnello II"). In those related cases, Agnello had filed a charge alleging that Coors had discriminated against her because of a physical handicap. Agnello I, 689 P.2d at 1164. The Division found probable cause, and conciliation was commenced under CADA. Id. There, unlike here, the conciliation process was successful and resulted in an agreement between Coors and the Division by which an independent physician would determine Agnello's capabilities for the position for which she had applied. Id. Although Agnello apparently did not consent to be bound by this determination, she agreed to cooperate and participate in the independent physician's evaluation. Id. Ultimately, the physician made a determination adverse to Agnello, she objected to that determination, and the matter was referred back to the director, who found that Coors's actions satisfied its obligations under the conciliation agreement and CADA. Id. 
 ¶115 Agnello then appealed to the Commission, which approved and confirmed the agreement, finding that the process to which the Division and Coors had 
 58
 agreed was proper and did not ignore CADA's protections for persons with disabilities. Id. Agnello then appealed to the court of appeals, which accepted jurisdiction. Id.; see also Agnello II, 695 P.2d at 313 (noting that because the conciliation efforts under CADA were successful, the district court could not acquire jurisdiction and an independent action based on the alleged CADA violation could not be brought). 
 ¶116 In my view, Agnello I and Agnello II are nothing like the present case. There, unlike here, the conciliation process was successful. Moreover, there, unlike here, the charging party participated in the conciliation process, although she did not agree to be bound by it. Here, in contrast, the settlement at issue was kept secret from Scardina. Indeed, Masterpiece and Phillips expressly resisted Scardina's intervention in the federal action before settling that action without providing Scardina with either notice or an opportunity to be heard. And unlike here, the conciliation process and review by the Commission in Agnello I and Agnello II resulted in a decision on the merits finding no discrimination. Accordingly, the administrative process in those cases indisputably resulted in a final order over which the court of appeals division could exercise jurisdiction. 
 ¶117 Even if Scardina could have appealed and the court of appeals could have exercised jurisdiction over such an appeal, however, it is not clear to me what such an appeal would have entailed. Under the majority's apparent view, Scardina 
 59
 would effectively have been forced to appeal the confidential settlement agreement between the Division and Masterpiece, in which she was not involved and which presumably required the dismissal of the charge at issue. This, in turn, would have forced Scardina to challenge the terms of that settlement agreement, even though she has never seen it. 
 ¶118 On this point, I take no comfort in an argument that Scardina can appeal the fact that the Commission dismissed and closed her case without her knowledge, participation, and consent and without issuing a ruling on the merits. For the reasons set forth above, I perceive no statutory basis for an argument that once the Commission sets a hearing on the merits, it can never settle over the charging party's objection and must instead proceed through the hearing and issue a ruling on the merits. Moreover, I am not convinced that the question that the majority believes Scardina should have raised on appeal necessarily involves a purely legal issue, as the majority seems to assume. See Maj. op. ¶¶ 36, 59. Rather, I believe that the question may well implicate the facts and circumstances leading to the settlement agreement and the terms of that agreement. Scardina, as a stranger to that agreement, however, would have had no ability to address those issues in an appeal of the Commission's Closure Order. 
 ¶119 For all of these reasons, I would conclude that the district court, in fact, had jurisdiction and the authority to consider Scardina's claim. 
 60
 ¶120 The question for me thus becomes whether Scardina exhausted her administrative remedies and, if not, whether any failure to do so constituted a jurisdictional default. These are the procedural issues that the parties actually litigated before us, and I turn to them next. 
 C. Scardina Exhausted Her Administrative Remedies 
 ¶121 As an initial matter, I acknowledge our prior case law stating, albeit with limited or no analysis, that the failure to exhaust administrative remedies is jurisdictional. See, e.g., Thomas v. Fed. Deposit Ins. Corp., 255 P.3d 1073, 1077 (Colo. 2011); State v. Golden's Concrete Co., 962 P.2d 919, 923 (Colo. 1998). Although I question whether those cases are correct on that point, see Santos-Zacaria v. Garland, 598 U.S. 411, 417 (2023) ("Exhaustion is typically nonjurisdictional ...."); see also Wood, 255 P.3d at 1140 ("Although the legislature has the power to limit courts' subject matter jurisdiction, we have held that such limitations must be explicit."), I need not reach that question here because I believe that Scardina exhausted her administrative remedies, as the Commission expressly found in its Closure Order. (Notably, neither Masterpiece nor Phillips has ever challenged the Commission's finding in this regard, which apparently was a byproduct of the settlement to which Masterpiece and Phillips had agreed. Accordingly, I believe that there are legitimate grounds to conclude that Masterpiece and Phillips waived any argument that Scardina had failed to exhaust her administrative remedies. For 
 61
 purposes here, however, I will assume without deciding that they did not waive this argument, and I will address it on its merits.) 
 ¶122 At the time relevant here, section 24-34-306(14), C.R.S. (2019), provided, in pertinent part, "No person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3," subject to exceptions not applicable in this case. (The legislature has since excluded claims of discrimination in public accommodations from the list of claims for which administrative remedies must be exhausted. See Ch. 271, sec. 1, § 24-34-306(14), 2023 Colo. Sess. Laws 1613, 1613.) 
 ¶123 Here, I believe that our analysis of the exhaustion question is quite simple because the Commission itself found in its March 22, 2019 Closure Order, "[A]ll administrative proceedings under part 3 of article 34 of title 24, C.R.S. have been exhausted." As noted above, neither Masterpiece nor Phillips has ever challenged this finding, and I do not believe that it is appropriate for them to rely on those portions of the Commission's dismissal and closure orders that they like while ignoring those portions that they do not. In addition, I perceive no basis on which to contest the Commission's conclusion that its own administrative proceedings have been exhausted. For this reason alone, I would conclude that Scardina exhausted her administrative remedies. 
 62
 ¶124 Even were there a viable question as to whether Scardina had exhausted these remedies, however, I would conclude that she did so. 
 ¶125 "The doctrine of administrative exhaustion requires a party to pursue available statutory administrative remedies before obtaining judicial review of a claim." Thomas, 255 P.3d at 1077. This doctrine (1) promotes "the efficient use and conservation of judicial resources, by ensuring that courts intervene only if the administrative process fails to provide adequate remedies"; and (2) "enables an agency to make initial determinations on matters within its expertise, identify and correct its own errors, and develop a factual record that will benefit the court if satisfactory resolution cannot be reached through the administrative process." Id. 
 ¶126 Here, the administrative proceeding itself indisputably came to an end when the Commission entered its dismissal and closure orders. The question thus becomes whether Scardina failed to exhaust her administrative remedies by not appealing those orders to the court of appeals. For the reasons set forth above, I do not believe that the court of appeals had jurisdiction to consider such an appeal, nor do CADA or its implementing regulations require an appeal in these circumstances. Accord Maj. op. ¶¶ 21, 42 n.8. Accordingly, in my view, there was nothing further for Scardina to do to exhaust her administrative remedies, and for the reasons set forth in Demetry, 752 P.2d at 1072, I believe that she was entitled to proceed to file a claim in district court. 
 63
 III. Conclusion 
 ¶127 Because (1) I do not believe that it was proper for the majority to conceive, develop, and then dispose of this case based on an argument that no party presented; (2) I believe that the district court had jurisdiction and the statutory authority to hear this case; and (3) Scardina exhausted her administrative remedies, I would reject Masterpiece's and Phillips's procedural challenges and reach the merits of this case. 
 ¶128 For these reasons, and because I have significant concerns about the substantive and procedural consequences of the majority's ruling, I respectfully dissent. 
 --------- 
 Notes: 
 [1] We granted certiorari to review the following issues: 
 
 1. Whether Scardina's CADA claim is barred because
 Scardina did not appeal the Commission's dismissal of the
 administrative complaint before suing Masterpiece Cakeshop
 Inc. and Phillips.
 
 
 2. Whether the decision by Masterpiece Cakeshop Inc.
 and Phillips not to create a pink cake with blue frosting
 that was to be used to celebrate a gender transition violated
 CADA's prohibition on transgender-status
 discrimination.
 
 
 3. Whether the decision by Masterpiece Cakeshop Inc.
 and Phillips not to create a pink cake with blue frosting
 that was to be used to celebrate a gender transition was
 protected by the First Amendment.
 
 [2] Though section 24-34-306(14) still requires administrative exhaustion for most CADA claims, an amendment in 2023 excluded claims of discrimination in places of public accommodation from this requirement. Ch. 271, sec. 1, § 24-34-306(14), 2023 Colo. Sess. Laws 1613, 1613. 
 [3] In addition to triggering deadlines for both of the administrative agencies responsible for handling these claims, the filing of a charge of discrimination with the Division also started the clock on a 180-day period during which Scardina was required to maintain her charge in the administrative process and could not seek to pursue a claim in district court. However, 180 days after she filed her charge with the Division, she was entitled to request and receive a right to sue letter and to file a claim in district court, so long as the Commission had not yet issued a Notice of Hearing. § 24-34-306(11), (15). 
 [4] These extensions are not explicitly documented in the record, but the district court's findings of fact conclude that "[b]oth parties requested jurisdictional extensions of time, ultimately extending the [Division]'s jurisdiction until October 13, 2018." This finding is supported by an exchange at trial between the court and Scardina's counsel, in which counsel provided the judge with documents indicating that the extensions were granted. Because it is supported by the record, we defer to the trial court's factual finding regarding these extensions. See People v. Johnson, 2024 CO 47, ¶ 22, 549 P.3d 1008, 1014 ("We accept and defer to a court's factual findings unless they are clearly erroneous or draw no support from competent evidence in the record."). 
 [5] We need not decide whether section 24-34-306's constraint on when a district court may hear a CADA claim is "jurisdictional"; we need only determine whether section 24-34-306 imposes limits, regardless of their character, that would vindicate Masterpiece's assertion that the district court could not properly hear Scardina's claim. Thus, to the extent we use the term 'jurisdiction' throughout this opinion, we refer only to the language of section 24-34-306 and do not intend to invoke the underlying legal significance of this term. 
 [6] Though they are both tasked with enforcing CADA, the Division and the Commission are distinct entities that engage with a discrimination complaint at different stages of the procedures described in section 24-34-306. See § 24-1-122(2)(h), C.R.S. (2024) (listing the Division and the Commission as separate entities within Colorado's Department of Regulatory Agencies); see also Colo. Civ. Rts. Div., The Complaint Process, https://ccrd.colorado.gov/the-complaint-process [https://perma.cc/3UUD-XSU8] ("The Commission is a separate and distinct body from the Colorado Civil Rights Division."). 
 [7] The "charges" that the notice and complaint require the respondent to answer are the charges filed by the "person claiming to be aggrieved by a discriminatory or an unfair practice." § 24-34-306(1)(a)(I). 
 [8] Masterpiece argues that section 24-34-306(14)'s exhaustion requirement mandated that Scardina pursue her right to appeal pursuant to section 24-34-307 before filing a district court suit because the provision on judicial review and enforcement is included within "this part 3." We disagree. True, section 24-34-307 is included in Part 3 of Title 24. But subsection 306(14) explicitly limits its exhaustion requirement to "administrative remedies." The right to review of agency decisions in the court of appeals, as described by section 24-34-307, is not a part of administrative remedies, but rather is a separate appellate right. 
 [9] We refer to this process under subsection 306(15) as the earliest moment a claim can move from administrative review to district court because of the time the administrative review often takes. In this case, for example, the Division issued its probable cause finding more than a year after Scardina filed her initial claim. The Commission served its notice of a formal hearing almost 450 days after Scardina filed her initial claim. CADA entitled Scardina to request a right to sue letter, moving from the administrative process to the district court, at any time from 180 days after she filed her claim with the Division up until the day that the Commission took up the claim by serving notice of the formal hearing. 
 [10] The current version of section 24-34-306 has eliminated the possibility of extensions and simply sets the timeline at 450 days. § 24-34-306(11), C.R.S. (2024). 
 ---------